**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VANESSA AYALA,<br><br>                      Plaintiff,<br><br>            v.<br><br>RANDOLPH TOWNSHIP; RANDOLPH TOWNSHIP POLICE DEPARTMENT; DETECTIVE WILLIAM HARZULA; JOHN DOES 1-20; AND ABC CORP. 1-20,<br><br>                      Defendants. | Civil Action No. 12-7809 (SDW) (SCM)<br><br><br>**OPINION**<br><br><br>October 30, 2014 |

**WIGENTON**, District Judge.

Before the Court is Defendants Township of Randolph, the Randolph Township Police Department, Detective William Harzula, John Does 1-20 and ABC Corp. 1-20's (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1441. Venue is proper pursuant to 28 U.S.C. § 1391(b). This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, this Court **GRANTS IN PART AND DENIES IN PART** the summary judgment motion of Defendants.

**I.    FACTUAL HISTORY**

Plaintiff, Vanessa Ayala, is an employee of the K-Mart store located on Route 10 in Randolph, New Jersey. (Defendants' Statement of Facts in Support of Summary Judgment ("Defs. SOF"), ¶ 1.) She is an adult, homosexual female. (Compl. ¶ 4). In June of 2010, the Randolph Township Police Department was informed that bales of cardboard were stolen from the rear of the Randolph K-Mart store. (Defs. SOF ¶ 2.) Three more thefts followed in July, September, and

October of 2010. (Id. ¶¶ 5-9.)  In October of 2010, Detective William Harzula ("Det. Harzula") of the Randolph Township Police Department was assigned to investigate the thefts. (Id. ¶ 8.) Det. Harzula interviewed Ayala, who was the shipping and receiving manager at the time, but did not consider her a suspect. (See Certification of William G. Johnson ("Johnson Cert"), Ex. G, Deposition of Detective Harzula ("Harzula Dep."), 30:1-32:13.)

In November of 2010, Det. Harzula was notified that two individuals, Samuel Alamo ("Alamo") and Jose Vazquez ("Vasquez"), who had been arrested by the Mount Olive Police Department for stealing cardboard boxes in that jurisdiction, admitted to committing a similar crime at the Randolph K-Mart with the help of an employee. (Defs. SOF ¶¶ 15-33.) Upon questioning, Alamo told Det. Harzula that Vasquez, whom he identified as the leader of the theft ring, paid an employee of the K-Mart in Randolph for the bales of cardboard. (Id. ¶ 19.) Alamo described the insider as a dark-haired Puerto Rican woman of "normal" height and average weight who looked like a "'tomboy' . . . a lesbian." (Id. ¶ 21; Johnson Cert., Ex. J, Transcript of Interview of Samuel Alamo ("Alamo Tr.") 22:13-23-14).  Specifically, Alamo described the K-Mart employee as follows:

> **Det. Harzula:** How would you describe this girl?
> **Alamo:** She [sic] like a tomboy, like, you know, lesbian.
> **Det. Harzula:** Oh, she's a lesbian looking girl?
> **Alamo:** Yeah.
> **Det. Harzula:** She tall or short?
> **Alamo:** She ain't tall, she ain't short. She's normal.
> **Det. Harzula:** White girl, black girl, Spanish girl?
> **Alamo:** I think she's Spanish.
> **Det. Harzula:** Yeah.
> **Alamo:** If I'm not mistaken she's dark hair [sic], she look [sic] Puerto Rican.
> **Det. Harzula:** All right. She kind of heavy, skinny?
> **Alamo:** Between, too [sic].
> **Det. Harzula:** Right in the middle of that too [sic]?
> **Alamo:** Yeah, yeah.
> [Alamo Tr. 24:17-25:15]

Subsequently, Det. Harzula interviewed Vasquez, who claimed that he spoke to a Puerto Rican "dyke"—a derogatory term for a female homosexual—at the Randolph K-Mart about taking the cardboard boxes, but denied that he paid her or that she otherwise permitted him to take the boxes. (Id. ¶ 29; Johnson Cert., Ex. K, Transcript of Vasquez ("Vasquez Tr.").) The following is an excerpt of Vasquez's response to Det. Harzula's inquiries about the alleged accomplice:

> **Det. Harzula**: What did she look like? Can you describe her?
> **Vasquez**: She's a dyke. . . .
>
> . . . .
>
> **Det Harzula**: It's just funny that the – you know, the way you described the female is [sic] a very rough looking lesbian, a little more colorful than that because the female that you're talking about is the exact female that works in the shipping and receiving in the rear of the K-Mart.
> **Vasquez**: Okay.
> **Det**. **Harzula**: That – that's her. I mean, you know, that's – if somebody would describe her, she – she is a very hard-looking lesbian woman.
>
> . . . .
>
> **Det**. **Harzula**: Okay. We're trying to talk to you about this female here that you described as a dyke. We know who you're talking about. Can you tell me anything further about her?
> **Vasquez**: The only thing I would tell you she told me is the cardboard --
> **Det**. **Harzula**: Okay. Do you know her?
> **Vasquez**: No, I don't know her personally. I know she's Puerto Rican like I am because I just do.
> **Det**. **Harzula**: Okay. Have you greased her palm?
> **Vasquez**: No, Officer, I'm not going to tell you that if you she can lose her job. I would never do that. People have to make a living somehow. I'm sorry.
> [Vasquez Tr., 17:19-21; 18:7-16; 21:22-22:10]

Neither Alamo nor Vasquez identified Ayala by name. (Harzula Dep. 71:3-5.) Det. Harzula did not conduct a photo lineup or photo array to confirm the suspect's identification.

3

(Harzula Dep. 71:6-74:15.) On November 24, 2010, Ayala agreed to a voluntary interview with Det. Harzula, during which she denied any involvement in the thefts or relationship with the individuals arrested for the crime. (Johnson Cert., Ex. I.)    Later that day, Det. Harzula sought and obtained an arrest warrant for Ayala. (Johnson Cert., Ex. J, Affidavit in Support of Arrest Warrant ("Ex. J" or "Aff."); Johnson Cert, Ex. M, Complaint and Warrant for Ayala's Arrest, ("Ex. M" or "Arrest Warrant").)

In his affidavit, Det. Harzula explained that the subject of the warrant conspired with Alamo and Vasquez to steal cardboard boxes from the K-Mart in Randolph. (Aff. ¶¶ 6-9.) After detailing Alamo's general description of the alleged accomplice, Det. Harzula stated that "[t]he K-Mart female employee that works in the shipping/receiving area is the defendant, Ms. Vanessa Ayala. The physical description Mr. Alamo gave of Ms. Ayala is very similar to her actual appearance." (Aff. ¶¶ 10-11.) In addition, Det. Harzula claimed that he believed that "the 'dyke' Mr. Vasquez spoke of is Ms. Vanessa Ayala; who is the same K-Mart employee Mr. Alamo spoke about during his interview." (Ex. J, ¶ 16.) On November 26, 2010, Ayala was arrested while at work and charged with conspiracy to commit theft, a third degree offense. (Compl. ¶ 4.) On May 5, 2011, by motion of the Morris County Prosecutor's Office, all charges against Ayala were dismissed. (Johnson Cert. Ex. O, Order of Dismissal.)

On November 21, 2012, Ayala filed a complaint in the Superior Court of New Jersey against Randolph Township, the Randolph Township Police Department, and Det. Harzula, alleging the following counts: (I) violations of 42 U.S.C. § 1983 as to Det. Harzula for false arrest and malicious prosecution; (II) failure of the Township of Randolph and the Randolph Township Police Department ("Randolph Defendants") to train, supervise and/or discipline Det. Harzula; (III) conspiracy by the Defendants to deprive Plaintiff of her civil rights, in contravention of 42

U.S.C. § 1985; (IV) violations of the New Jersey Law Against Discrimination; (V) violations of the New Jersey Civil Rights Act; and (VI) punitive damages. (Compl. ¶¶ 31-64.) On December 21, 2012, Defendants filed a Notice of Removal to this Court. (ECF No. #1). Thereafter, Defendants filed the instant motion for summary judgment as to all counts of the complaint.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (quoting <u>Celotex Corp.</u>, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." <u>Black Car Assistance Corp. v. New Jersey</u>, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp.</u>, 477 U.S. at 322-23.

**DISCUSSION**

**I.      Summary Judgment as to Det. Harzula.**

      **a.   Count I: False Arrest and Malicious Prosecution.**

In Count I of her complaint, Plaintiff alleges § 1983 violations against Det. Harzula based on false arrest and malicious prosecution. (Compl. ¶¶ 31-37). Pursuant to 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

6

42 U.S.C. § 1983.  "Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." Woodyard v. Cnty. of Essex, 514 F. App'x 177, 180 (3d Cir. 2013).  To assert a § 1983 claim, "a plaintiff 'must establish that she was deprived of a federal constitutional or statutory right by a state actor.'" Id. (quoting Kach v. Hose, 589 F.3d 626, 646 (3rd Cir. 2009)).

### i. False Arrest.

"The Fourth Amendment prohibits arrests without probable cause." Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000).  The proper inquiry in analyzing a § 1983 claim based on false arrest "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988).  Generally, the question of probable cause in a § 1983 suit is one for the jury. Campbell v. Moore, 92 F. App'x 29, 33 (3d Cir. 2004). "However, a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" Merkle v. Upper Dublin School Dist., 211 F.3d 782, 789 (3d Cir. 2000).  In that case, the court may enter summary judgment accordingly. Id.

In determining whether probable cause existed for an arrest, courts apply an objective standard based on "the facts available to the officers at the moment of the arrest." Beck v. State of Ohio, 379 U.S. 89, 96 (1964).  "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990)).  Nevertheless it does not "require the same type of

specific evidence of each element of the offense as would be needed to support a conviction." Adams v. Williams, 407 U.S. 143, 149 (1972).

Plaintiff has demonstrated that a genuine issue of material fact exists regarding whether the facts available to Det. Harzula when he sought a warrant for Plaintiff's arrest would lead a reasonable, well-trained officer to conclude that Plaintiff committed a crime. The undisputed record reveals that Alamo and Vasquez provided vague descriptions of their alleged accomplice: Alamo described the insider as a dark-haired, Hispanic lesbian of "normal" weight and height, and Vasquez simply stated that she was a "dyke" of Puerto Rican descent. Neither witness identified Plaintiff by name. (Harzula Dep. 71:3-5). In fact, after Vasquez described the alleged accomplice as a "dyke", Det. Harzula did not pose follow-up questions to elicit more specific physical identifiers, rather, he commented that "the female that you're talking about is the exact female that works in the shipping and receiving in the rear of the K-Mart. . . . [t]hat – that's her. I mean, you know, that's – if somebody would describe her, she – she is a very hard-looking lesbian woman." (Vasquez Tr., 17:19-21; 18:7-16).

Also, Det. Harzula did not conduct a photo lineup to confirm the suspect's identity.[1] (Harzula Dep. 71:6-74:15). This is especially troubling because, as Plaintiff alleges, three other Hispanic females worked in the shipping and receiving department of the K-Mart at the time the thefts occurred. (Johnson Cert., Ex. A, Deposition of Vanessa Ayala ("Ayala Dep.") 17:1-19). Det. Harzula testified that he was unaware of this fact during his investigation because "[he] believe[s] [he] was told" by Mr. Grosinski, the loss prevention officer at the Randolph K-Mart, that Plaintiff

---

[1] At his deposition, Det. Harzula explained that he did not utilize a photo lineup or photo array in this case because he believes photo identification techniques are largely unreliable. While Det. Harzula is not required to perform a photo array, his failure to otherwise verify the alleged accomplice's identity, especially in light of the vague descriptions offered by the witnesses, undermines the rigor of his investigation and his claimed reasonable belief that probable cause existed for Plaintiff's arrest.

was the only female employee in the receiving department. (Harzula Dep. 45:16-46:23). The details of Det. Harzula's conversation with Mr. Grosinski are not properly before this Court.[2] Nonetheless, there is no dispute that Det. Harzula did not independently confirm that Plaintiff was in fact the only female employee in the shipping department. Id.

Thus, accepting all factual allegations as true, and construing the complaint in the light most favorable to the Plaintiff, a genuine issue of material fact exists as to whether there was probable cause for Plaintiff's arrest. Consequently, Plaintiff's false arrest claim may proceed to trial.

### ii. Malicious Prosecution.

To establish a malicious prosecution claim under § 1983, a plaintiff must demonstrate that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 362-363 (3d Cir. 2003). To prevail on a malicious prosecution claim, the plaintiff must show that the officer lacked probable cause to arrest. Wright v. City of Phila., 409 F.3d 595, 603-604 (3d Cir. 2005). "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997) (quoting Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988)). Malice "may be inferred from lack of probable cause." Morales, 972 F. Supp. at 261.

---

[2] Det. Harzula's investigative notes and reports do not address this issue and Mr. Grosinski has not been deposed.

Det. Harzula is not entitled to summary judgment on Plaintiff's malicious prosecution claim. Plaintiff was arrested and charged with the offense of conspiracy to commit theft. Thereafter, all charges were administratively withdrawn. As previously discussed, there is a genuine issue of material fact regarding whether probable cause existed at the time of Plaintiff's arrest. As such, a jury may find Det. Harzula's belief that probable cause existed was unreasonable and infer malice therefrom. Lastly, with regard to deprivation of liberty, Plaintiff alleges that she was held in police custody for several hours and was required to attend numerous court proceedings while criminal charges were pending against her. These allegations suffice to establish a malicious prosecution claim.  Therefore, summary judgment is denied as to Count I.

**b.  Counts IV and V: Violation of the New Jersey Law Against Discrimination and New Jersey Civil Rights Act.**

In Count IV, Plaintiff alleges that Det. Harzula "[b]y arresting the Plaintiff without any basis for probable cause and due solely to her sexual orientation, . . . violated the [New Jersey] Law Against Discrimination." (Compl. ¶ 52).  In Count V, she contends Det. Harzula "caused Plaintiff to suffer a false arrest, malicious prosecution and wrongful imprisonment and selective enforcement of their wrongful conduct in failing to investigate the incident fully, all in violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq. and Article I, Pars. 5 and 7 of the New Jersey Constitution." (Compl. ¶ 59).  Because the analysis for Plaintiff's New Jersey claims are the same as that of Count I, for the reasons stated above, this Court finds that Det. Harzula is not entitled to summary judgment as to Counts IV and V.

**II.    Det. Harzula's Entitlement to Qualified Immunity.**

Det. Harzula invokes the doctrine of qualified immunity as an alternative basis for summary judgment. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." <u>See</u> <u>In re City of Phila. Litig.</u>, 49 F.3d 945, 961 (3d Cir. 1995).

An arrest warrant issued by a magistrate or judge does not, in itself, shield an officer from liability for false arrest. See <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). "A plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" <u>Wilson v. Russo</u>, 212 F.3d 781, 786-87 (3d Cir. 2000) (quoting <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997)) (footnote omitted).

The Third Circuit has explained that omissions are made with reckless disregard for the truth if the affiant withholds from the affidavit known information that "any reasonable person would have known that this was the kind of thing the judge would wish to know." <u>Wilson</u>, 212 F.3d at 788 (quoting <u>United States v. Jacobs</u>, 986 F.2d 1231, 1235 (8th Cir. 1993)). The Third Circuit emphasized that although absolute inclusiveness is not required in order for an affidavit to pass constitutional muster, as "[a]ll storytelling involves an element of selectivity"; to ensure robust protection of the arrestee's Fourth Amendment rights, "a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying . . . himself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence." <u>Id.</u> at 787.

As a threshold matter, Det. Harzula is alleged to have violated a clearly established constitutional right. Plaintiff alleges that Det. Harzula's "conduct in arresting the plaintiff violates the Fourth Amendment of the Constitution as an unreasonable seizure or arrest without probable cause." (Pl. Br. 10.) Moreover, Ayala argues that Det. Harzula deliberately concealed the following facts in his warrant application: (1) that the witnesses provided imprecise physical descriptions of the suspect; (2) that there was no photo array shown to the witnesses and that Plaintiff was not otherwise positively identified by them; (3) that there were three other Hispanic female employees in the K-Mart's shipping and receiving department; (4) that one of the witnesses repeatedly denied that he colluded with Plaintiff. (Pl. Br.  7.) In essence, Plaintiff contends that Det. Harzula unilaterally concluded probable cause existed and secured an arrest warrant by simply informing the judge of inculpatory evidence. If proven, these allegations would obviate Det. Harzula's entitlement to qualified immunity.

Because there are material facts in dispute regarding the existence of probable cause at the time of Plaintiff's arrest, these issues cannot be decided on summary judgment and should proceed to trial. Abramson v. William Patterson College, 260 F.3d 265, 289 n.22 (2001).

### III.     Summary Judgment as to the Randolph Defendants.

Initially, the Court notes that Plaintiff did not, in her opposition brief, present any argument that summary judgment should not be granted to the Randolph Defendants. Notwithstanding, for independent reasons, Randolph Township Police Department and the Township of Randolph are entitled to summary judgment on Plaintiff's claims.

#### a.   Count II: Monell Liability.

Under the Supreme Court's decision in Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978), § 1983 plaintiffs may assert claims against governmental entities where their "policies and practices" proximately result in civil right violations.  Here, Ayala contends that the Randolph Township Police Department and the Township of Randolph "tolerated and condoned the violation of the civil rights of its citizens by failing to properly investigate and discipline its officers with respect to citizen complaints and thereby created an atmosphere whereby civil rights violations frequently occurred." (Compl. ¶ 41.)

### i. Randolph Township Police Department.

It is well-settled that a police department is not a "person" amenable to suit under § 1983 pursuant to Monell. PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 826 (D.N.J. 1993). To be sure, the Third Circuit has recognized that a municipal police department is "merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004) (quoting DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)); see also N.J.S.A. 40A:14-118 (providing that New Jersey police departments are "an executive and enforcement function of municipal government.") Consequently, this Court grants summary judgment to the Randolph Township Police Department as to Count II of Plaintiff's complaint.

### ii. Township of Randolph.

The Supreme Court has held that § 1983 does not impose liability on municipal entities for the constitutional misconduct of their employees or agents under the doctrine of respondeat superior. Monell, 436 U.S. at 691. Likewise, a municipal entity is immune from liability for its agent's actions unless the claimed civil rights violation resulted from the agent's execution of that entity's "policy or custom." Id. at 694. Therefore, this Court's determination turns on whether the

alleged harm, here, an unconstitutional seizure, resulted from "official municipal policy or custom." Schneider v. Simonini, 163 N.J. 336, 371 (2000).   In the instant matter, Plaintiff has not produced a single fact from which a reasonable jury may conclude that the Township of Randolph has a policy or custom of encouraging or condoning unconstitutional seizures, and that Det. Harzula acted in accordance with said policy or custom. No such policy is identified in the complaint, nor was same uncovered during discovery. The allegations of the complaint merely recite the legal elements of a municipal "policy" liability claim. Therefore, the Township's motion for summary judgment will be granted as to Count II.

> **b.  Count III: Conspiracy.**

For an actionable § 1983 conspiracy claim to exist, "the plaintiff must make specific factual allegations of a combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events in order to deprive plaintiff of a federally protected right." Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 385 (D.N.J. 1998) (citing Darr v. Wolfe, 767 F.2d 79, 80 (3d Cir. 1985)); Ammlung v. City of Chester, 494 F. 2d 811, 814 (3d Cir. 1974)).

The existence or nonexistence of a conspiracy is a factual issue for the jury to decide. Adickes v. S. H. Kress & Co., 398 U.S. 144, 176 (1970).  Therefore, to move past summary judgment, the plaintiff must show that a jury could "infer from the circumstances [(that the alleged conspirators)] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspirators' objective. Id. at 158.  Furthermore, the plaintiff is required to "prove with specificity the circumstances of the alleged conspiracy, such as those addressing the period of conspiracy, object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose." Fioriglio, 996 F. Supp. at 386.

Here, Plaintiff alleges that Defendants "conspired for the purpose of impeding, hindering, obstructing and defeating the due course of justice with the intent to deny Plaintiff the protection of the laws and to injure her." (Compl. ¶45.) She further contends that Defendants each had actual knowledge of the conspiracy and acted in furtherance thereof. (Compl. ¶¶ 46-47.) Plaintiff's pleadings, even when viewed in the most liberal light, are simply devoid of the factual detail necessary to survive summary judgment. As Plaintiff has failed to adduce specific facts from which a conspiracy to violate her civil rights may be inferred, summary judgment is granted as to all Defendants on Count III.

### c. Counts IV and V: Violation of the New Jersey Law Against Discrimination and New Jersey Civil Rights Act.

In Counts IV and V of her complaint, Plaintiff alleges that the Randolph Defendants violated the New Jersey Law Against Discrimination and New Jersey Civil Rights Act. (Compl. ¶¶ 49-60). This Court declines to exercise supplemental jurisdiction over these state law claims in light of the disposal of Plaintiff's federal claims against the Randolph Defendants. As such, to the extent that they pertain to the Randolph Defendants, Counts IV and V are dismissed.

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is **DENIED** as it relates to Det. Harzula and **GRANTED** as to the Randolph Defendants. Therefore, Counts II and III are dismissed in their entirety, and Counts IV and V are dismissed as to the Randolph Defendants. An Order consistent with this Opinion follows.

s/ Susan D. Wigenton, U.S.D.J.

cc:    Hon. Steven C. Mannion, U.S.M.J.

15